COMPOSITE TECHNOLOGY, INC., Plaintiff v. ADVANCED COMPOSITE STRUCTURES (USA), INC., Defendant

No. COA01-465

(Filed 21 May 2002)

**Jurisdiction— subject matter—personal liability of a non-party**

The trial court lacked subject matter jurisdiction to enter an order assessing personal liability against an officer of defendant corporation who was not a party to the underlying dispute for

COMPOSITE TECH., INC. v. ADVANCED COMPOSITE STRUCTURES (USA), INC.

[150 N.C. App. 386 (2002)]

debts owed by defendant to plaintiff corporation for alleged trade secret violations and unfair trade practices based on the corporate officer's failure to properly respond to plaintiff's interrogatories, and the order of the trial court is vacated, because: (1) the appropriate remedy for the corporate officer's alleged failure to answer plaintiff's interrogatories would have been for plaintiff to file a separate civil action in order to obtain a judgment for personal liability since the corporate officer was not a party to the original suit against defendant, N.C.G.S. § 1-324.3; (2) although plaintiff could properly serve the interrogatories on the corporate officer as an ancillary action to the underlying judgment, whether plaintiff could properly seek to establish personal liability on the corporate officer's part for his failure to adequately respond to such interrogatories by filing a motion in the cause is another matter; (3) if plaintiff was unsatisfied with the answers it received in response to the interrogatories it sent, it could have petitioned the court for entry of an order requiring defendant to appear and properly respond to questions regarding defendant's assets, N.C.G.S. § 1-352.1; and (4) plaintiff could have filed a separate action against the corporate officer under N.C.G.S. § 1-324.4 for his failure to comply with N.C.G.S. § 1-324.2.

Appeal by defendant and Bruce Anning from order entered 1 December 2000 by Judge Michael E. Helms in Guilford County Superior Court. Heard in the Court of Appeals 20 February 2002.

*Fisher Clinard & Craig, P.L.L.C., by John O. Craig, III, and Alyce E. Hill, for plaintiff appellee.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Amy Pritchard Williams, for defendant appellant.*

TIMMONS-GOODSON, Judge.

Advanced Composite Structures (USA), Inc. ("defendant") and Bruce Anning ("Anning"), an officer of defendant corporation, appeal from an order by the trial court assessing personal liability against Anning for debt owed by defendant to Composite Technology, Inc. ("plaintiff"). For the reasons set forth herein, we vacate the order of the trial court.

On 27 December 1996, plaintiff filed a complaint against defendant in Guilford County Superior Court, alleging that one of plaintiff's former employees had disclosed certain trade secrets to defendant.

The complaint sought relief based on claims of misappropriation of trade secrets, breach of contract, unfair competition, tortious interference with contract, and unfair and deceptive trade practices. Plaintiff moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, and the trial court heard the matter on 13 September 1999. Defendant did not appear to defend plaintiff's motion or to prosecute its counterclaims. Finding that no genuine issues of material fact existed, the trial court granted plaintiff's motion for summary judgment and awarded plaintiff actual damages in accordance with the North Carolina Trade Secrets Protection Act. The trial court further determined that defendant had committed unfair and deceptive trade practices and trebled plaintiff's damages pursuant to section 75-1.1 of the General Statutes. Plaintiff was also awarded attorneys' fees, with total damages awarded in the sum of $264,000,00.

On 31 May 2000, a writ of execution was filed against defendant in the amount of $264,000.00. The writ of execution was eventually returned unserved by the Guilford County Sheriff's Office, as the sheriff was unable to locate any property on which to levy. In order to discover defendant's potential assets, plaintiff filed a "Notice for Execution Information" and a demand for "Execution Information" pursuant to sections 1-324.2, *et seq.* of the North Carolina General Statutes. The notice was addressed to "JIM ANNING as President, Agent, Officer or other person having charge or control of any property of ADVANCED COMPOSITE STRUCTURES (USA), INC." The Execution Information set forth a written set of interrogatories concerning the nature and location of defendant's assets. On 5 July 2000, Bruce Anning, a Canadian citizen and brother to Jim Anning, was served with the "Notice for Execution Information." Anning accepted service as president of defendant corporation.

On 14 July 2000, Anning responded to plaintiff's interrogatories by sending the following letter to the Guilford County Sheriff's Department:

I, Bruce Anning, am no longer an officer of Advanced Composite Structures (USA), Inc. As far as I know, Advanced Composite Structures (USA) Inc. has been administratively dissolved as a result of the company ceasing operations in May of 1999. To the best of my recollection, I am not aware of any assets belonging to, or debts owed to, Advanced Composite Structures (USA) Inc.

COMPOSITE TECH., INC. v. ADVANCED COMPOSITE STRUCTURES (USA), INC.

[150 N.C. App. 386 (2002)]

Plaintiff thereafter filed a "Motion in the Cause for Personal Liability" pursuant to section 1-324.3 of the General Statutes, requesting that the court assess personal liability against Anning for the debt owed by defendant to plaintiff.

On 30 October 2000, plaintiff's motion came before the trial court, which found that Anning had failed to properly respond to plaintiff's interrogatories. The trial court concluded that "Bruce Anning's failure to respond to the interrogatories propounded in the manner required by law hereby cause him to be liable to the Plaintiff/Judgment Creditor herein for the amount due on the execution." The trial court therefore entered an order assessing personal liability against Anning for the amount of $264,000.00, along with expenses and attorneys' fees in the amount of $48,393.57, from which defendant and Anning appeal.

---

Defendant contends that the trial court improperly imposed personal liability upon Anning for the debt owed by defendant to plaintiff because it lacked subject matter jurisdiction over the action. We agree with defendant, and we therefore vacate the order of the trial court.

Although defendant made no arguments concerning subject matter jurisdiction before the trial court, a party may raise the issue at any stage of a proceeding. *See Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C. App. 414, 421, 248 S.E.2d 567, 571 (1978), *disc. review denied*, 296 N.C. 583, 254 S.E.2d 32 (1979). This Court may also raise the issue even if neither party has addressed the matter. *See id.* Defendant asserts that, since Anning was not a party to the original suit against defendant, the appropriate remedy for his alleged failure to answer plaintiff's interrogatories would have been for plaintiff to file a separate civil action in order to obtain a judgment for personal liability. Because plaintiff failed to file a separate action, defendant argues the trial court lacked subject matter jurisdiction over the matter. Under the facts of the instant case, we agree with defendant.

"Common experience has taught that vital information regarding assets which ought to be subjected to the lien of or discharge of a judgment are often in the hands of third persons and, as well, information concerning such assets . . . ." *Ex Parte Burchinal*, 571 So. 2d 281, 283 (Miss. 1990). In order to assist legitimate creditors in the execution of unsatisfied judgments, the North Carolina General Statutes provide several methods to assist judgment creditors in locating

assets belonging to a judgment debtor. One such method is set forth under section 1-324.2 of our General Statutes, which provides that

> [e]very agent or person having charge or control of any property of the corporation, on request of a public officer having for service a writ of execution against it, shall furnish to him the names of the directors and officers thereof, and a schedule of all its property, including debts due or to become due, so far as he has knowledge of the same.

N.C. Gen. Stat. § 1-324.2 (2001). In the event the agent "neglects or refuses to comply with the provisions of [section 1-324.2,]" he becomes "liable to pay to the execution creditor the amount due on the execution, with costs." N.C. Gen. Stat. § 1-324.4 (2001). Further, a judgment creditor may discover information regarding corporate shares through section 1-324.3, which states that:

> Any share or interest in any bank, insurance company, or other joint stock company, that is or may be incorporated under the authority of this State, or incorporated or established under the authority of the United States, belonging to the defendant in execution, may be taken and sold by virtue of such execution in the same manner as goods and chattels. The clerk, cashier, or other officer of such company who has at the time the custody of the books of the company shall, upon being shown the writ of execution, give to the officer having it a certificate of the number of shares or amount of the interest held by the defendant in the company; and if he neglects or refuses to do so, or if he willfully gives a false certificate, he shall be liable to the plaintiff for the amount due on the execution, with costs.

N.C. Gen. Stat. § 1-324.3 (2001). Violation of sections 1-324.2-4 is a Class 1 misdemeanor. *See* N.C. Gen. Stat. § 1-324.5 (2001).

Section 1-352.1 of the General Statutes establishes further means of locating potential assets belonging to a judgment debtor, providing in pertinent part that

> [a]s an additional method of discovering assets of a judgment debtor, the judgment creditor may prepare and serve on the judgment debtor written interrogatories concerning his property, at any time the judgment remains unsatisfied, and within three years from the time of issuing an execution. Such written interrogatories shall be fully answered under oath by the judgment debtor within 30 days of service on the judgment debtor . . . .

Interrogatories may relate to any matters which can be inquired into under G.S. 1-352 . . . .

Upon failure of the judgment debtor to answer fully the written interrogatories, the judgment creditor may petition the court for an order requiring the judgment debtor to answer fully, which order shall be served upon the judgment debtor in the same manner as a summons is served pursuant to the Rules of Civil Procedure, fixing the time within which the judgment debtor can answer the interrogatives . . . .

Any person who disobeys an order of the court may be punished by the judge as for a contempt under the provisions of G.S. 1-368.

N.C. Gen. Stat. § 1-352.1 (2001).

In the instant case, plaintiff attempted to utilize section 1-324.2 in order to locate potential assets belonging to defendant by sending the Notice for Execution Information ("Notice") to Anning, who accepted as president of the company. The Notice, however, was not limited to a request for the names of defendant's directors and officers and a schedule of its property as provided for in section 1-324.2. Instead, the Notice demanded within fifteen days after service notarized responses to twenty-nine detailed questions, some of which requested personal information of Anning. As such, the Notice sent by plaintiff more closely resembled a proceeding under section 1-352.1. During argument before this Court, plaintiff contended that it proceeded simultaneously under both sections 1-324.2 and 1-352.1 when it sent its Notice to Anning.

Interrogatories propounded under section 1-352.1 take place as a supplementary proceeding to the execution of a judgment. *See* N.C. Gen. Stat. §§ 1-352, *et seq.* Section 1-352.1 thereby allows a judgment creditor to discover the assets of a judgment debtor without the burden of initiating a separate action. *See Rand v. Rand*, 78 N.C. 12, 15 (1878) (stating that, "[p]roceedings supplementary to execution are but a prolongation of the action necessary to the final discharge of the judgment, the purpose . . . being that all matters affecting the complete satisfaction and determination of the action shall be settled in the same action, instead of by a multiplicity of suits"). Thus, plaintiff could properly serve the interrogatories on Anning in his role as president of the judgment debtor as an ancillary matter to the original action.

Although plaintiff could properly serve the interrogatories on Anning as an ancillary action to the underlying judgment, whether or not plaintiff could properly seek to establish personal liability on Anning's part for his failure to adequately respond to such interrogatories by filing a motion in the cause is another matter. Plaintiff's motion in the cause for personal liability against Anning was filed pursuant to section 1-324.3. Unlike section 1-352.1, which details the appropriate procedure for a judgment creditor to follow if a judgment debtor fails to appropriately respond to propounded interrogatories, section 1-324.3 states simply that the "clerk, cashier, or other officer of such company who has at the time the custody of the books of the company . . . shall be liable to the plaintiff for the amount due on the execution, with costs" if such a person neglects or refuses to give to the officer serving the writ of execution the appropriate information. N.C. Gen. Stat. § 1-324.3. Thus, section 1-324.3 establishes a penalty for violation of this section, but it does not specify a method for proceeding against a person who has potentially violated its mandates.

In such instance, we conclude that a plaintiff who seeks to enforce section 1-324.3 by establishing personal liability against a person for the debt owed by the judgment creditor must do so by filing a separate proceeding against that person. In the case at bar, plaintiff's cause of action against Anning—namely, personal liability for his alleged failure to comply with section 1-324.3—was an entirely distinct and separate matter than the original cause of action filed by plaintiff against defendant—that of liability for alleged violations of the North Carolina Trade Secrets Protection Act and section 75-1.1 of the General Statutes. Anning was not a party to the original action. We do not read section 1-324.3 to authorize a judgment creditor to pursue personal liability against a non-party for substantial monies owed by a judgment debtor by merely filing a motion in the prior action. Unlike section 1-352.1, a proceeding under section 1-324.3 is not a supplemental proceeding to the original action. *Compare* N.C. Gen. Stat. § 1-352.1 (appearing in Article 31, entitled "Supplemental Proceedings") and N.C. Gen. Stat. § 1-324.3 (set forth in Article 28, entitled "Execution"); *see also Bronson v. Insurance Company*, 85 N.C. 411, 413 (1881) (holding that where a judgment creditor of a corporation caused an execution to issue, which was returned unsatisfied, and then brought a suit for himself and all other creditors against the corporation and its stockholders, demanding an accounting to ascertain the amount due upon unpaid stock in order to pay the debt of the corporation, such

suit was a new and independent action and not a proceeding supplementary to execution).

If plaintiff here was unsatisfied with the answers it received in response to the interrogatories it sent, it could have petitioned the court for entry of an order requiring defendant to appear and properly respond to questions regarding defendant's assets. *See* N.C. Gen. Stat. § 1-352.1. Plaintiff could have also filed a separate action against Anning under section 1-324.4 for his failure to comply with section 1-324.2.[1] As plaintiff failed to file an action against Anning, who was not a party to the underlying dispute, no legitimate action existed over which the trial court could properly exercise jurisdiction. *See* N.C. Gen. Stat. § 1A-1, Rules 2, 3 (2001) (requiring the filing of a complaint with the court in order to commence a civil action); *In re Transportation of Juveniles*, 102 N.C. App. 806, 808, 403 S.E.2d 557, 558 (1991) (noting that, "before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question"). The trial court therefore lacked subject matter jurisdiction to enter the order assessing personal liability against Anning for debts owed by defendant to plaintiff. We therefore vacate the order of the trial court.

Vacated.

Judges WYNN and TYSON concur.

---

1. We note incidentally that as there was no evidence whatsoever that Anning was a "clerk, cashier, or other officer . . . ha[ving] at the time the custody of the books of the company" as required under section 1-324.3, sections 1-324.2 and 1-324.4 would have been the more appropriate sections under which to proceed against Anning. N.C. Gen. Stat. § 1-324.3.